J-A13016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ANN MARIE SWATT, PERSONAL REPRESENTATIVE OF THE ESTATE OF MADLYN BLUSIUS | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : | |
| v. | : : : | |
| | : | No. 1506 MDA 2021 |
| | : | |
| NOTTINGHAM VILLAGE, NOTTINGHAM MANAGEMENT, LLC, NOTTINGHAM VILLAGE RETIREMENT CENTER, LLC, NOTTINGHAM VILLAGE HEALTHCARE SERVICES, INC., LEEDS HEALTHCARE SERVICES, INC., SYNERGY GRANDVIEW PHARMACY, LLC AND FREDERICK KESSLER | : : : : : : : : : | |

Appeal from the Order Entered October 12, 2021
In the Court of Common Pleas of Northumberland County Civil Division at
No(s): CV-2014-00830

| | | |
|---|---|---|
| ANN MARIE SWATT, PERSONAL REPRESENTATIVE OF THE ESTATE OF MADLYN BLUSIUS | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : | |
| v. | : : : | |
| | : | No. 1507 MDA 2021 |
| | : | |
| NOTTINGHAM VILLAGE, NOTTINGHAM MANAGEMENT, LLC, NOTTINGHAM VILLAGE RETIREMENT CENTER, LLC, NOTTINGHAM VILLAGE HEALTHCARE SERVICES, INC., AND LEEDS HEALTHCARE SERVICES, INC. | : : : : : : | |

Appeal from the Order Dated October 12, 2021

J-A13016-23

In the Court of Common Pleas of Northumberland County Civil Division at No(s):  CV-2014-00005

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED: APRIL 26, 2024**

Ann Marie Swatt, Administratrix[1] of the Estate of Madlyn Blusius, Deceased, appeals from the order, entered in the Court of Common Pleas of Northumberland County, granting summary judgment in favor of Nottingham Village, Nottingham Management, LLC, Nottingham Village Retirement Center, LLC, Nottingham Village Healthcare Services, Inc., Leeds Healthcare Services, Inc., and Frederick Kessler (collectively, "Nottingham").[2]   Upon careful

---

[*] Former Justice specially assigned to the Superior Court.

[1] The original plaintiff in this matter was Elizabeth Jane Swatt, who was appointed as administratrix *pro tem* of the estate by order of the Franklin County Court of Common Pleas on April 11, 2014.  By trial court order dated February 24, 2020, Ann Marie Swatt, daughter of Elizabeth Swatt, was substituted as plaintiff upon being appointed administratrix of the estate and is the appellant herein.   To avoid confusion, we will use the term "Administratrix" to refer to both Ann Marie and Elizabeth Swatt.

[2] On July 5, 2022, Synergy Grandview Pharmacy, Inc. ("Synergy"), a defendant in the ***Blusius III*** matter, ***see*** discussion ***infra***, filed a motion to intervene for the limited purpose of moving to quash any putative appeal as to Synergy.  As discussed ***infra***, in 2016, the trial court entered judgment on the pleadings in favor of Synergy.  Thereafter, "Synergy was removed from the caption of the case, and Synergy and its counsel received no notices from the trial court and virtually no correspondence relating to the action for approximately six years."  Motion to Intervene, 7/5/22, at ¶ 11.  After the instant appeal was filed, Nottingham's counsel reached out to counsel for Synergy to advise that Administratrix had included in her brief a claim regarding the trial court's order granting Synergy judgment on the pleadings. Accordingly, Synergy sought intervention to file an application to quash "any

*(Footnote Continued Next Page)*

- 2 -

consideration, we affirm in part, reverse in part, and remand for further proceedings.

This matter has a long and tortured procedural history involving three separate actions[3] and litigation lasting eight years. The claims all arise from the death of Madlyn Blusius ("Decedent") on January 5, 2012, while residing at Nottingham Village Retirement Center, and involve allegations of negligence and breach of contract. The first action ("***Blusius I***") was initiated by the then-Executrix of the Decedent's Will, Janine Hawbaker, Esquire, on January 2, 2014, via the filing of a writ of summons at docket number CV-2014-05. The writ of summons stated that the civil action sounded in medical professional liability against Nottingham. On April 15, 2014, Executrix filed a motion to enlarge time to file a complaint at the ***Blusius I*** docket number, to which Nottingham consented. On May 13, 2014, within the time allotted by the court, Elizabeth Jane Swatt, having by then been appointed as administratrix *pro tem* of the Estate, filed a complaint alleging wrongful death, survival, and breach of contract claims. That complaint, however, was docketed at a new number—the ***Blusius III*** docket number. ***See*** discussion

_____

putative appeal regarding the 2016 entry of judgment" in its favor. ***Id.*** at ¶ 19. On August 4, 2022, this Court entered an order, *inter alia*, directing this Court's Prothonotary, as well as the Prothonotary of Northumberland County, to correct their dockets to reflect that Synergy is an appellee/defendant and directed Synergy to raise the issue of quashal in its appellee's brief. Synergy has submitted its brief and addressed, *inter alia*, the issue of quashal therein.

[3] As will become clear, Administratrix argues that at least two of these three actions should, in fact, be considered one action.

*infra*.  On May 29, 2014, the trial court entered an order dismissing the *Blusius I* action for failure to file a complaint.  More than seven years after the court dismissed that action, Administratrix filed a notice of appeal at the *Blusius I* docket number.  That appeal was docketed in this Court at 1507 MDA 2021.

On January 6, 2014, after the filing of the initial writ of summons in *Blusius I*, but prior to the filing of *Blusius III*, Elizabeth Jane Swatt and Ann Marie Swatt, Decedent's sister and niece, respectively, purportedly acting as self-described "trustees *ad litem*" for the estate, filed a second action, at docket number CV-2014-25 ("*Blusius II*"), alleging wrongful death.  By order dated March 21, 2014, the trial court dismissed this complaint on preliminary objections for lack of capacity to sue.[4]  *Blusius II* is not at issue in these appeals.

_____

[4] The Swatts styled themselves as "trustees *ad litem*" pursuant to Pa.R.C.P. 2202, which provides as follows:

Rule 2202. Parties Entitled to Bring Action for Wrongful Death Currentness

(a)    Except as otherwise provided in clause (b) of this rule, an action for wrongful death shall be brought only by the personal representative of the decedent for the benefit of those persons entitled by law to recover damages for such wrongful death.

(b)    If no action for wrongful death has been brought within six months after the death of the decedent, the action may be brought by the personal representative or by any person entitled by law to recover damages in such action as trustee ad litem on behalf of all persons entitled to share in the damages.

*(Footnote Continued Next Page)*

- 4 -

Finally, on May 13, 2014, Elizabeth Swatt, in her capacity as Administratrix *pro tem*, filed a complaint ("**Blusius III**"), assigned docket number CV-2014-830. This complaint alleged counts of wrongful death, survival, and breach of contract against Nottingham and an entity identified as "Synergy Health Systems." Administratrix subsequently filed three amended complaints on June 30, 2014, January 6, 2015, and January 29, 2015. In response to the third amended complaint, Synergy Grandview Pharmacy, Inc. ("Synergy"), filed preliminary objections. The court granted those preliminary objections, in part, and denied them in part. Specifically, the court dismissed, with prejudice, Administratrix's breach of contract claim against Synergy. Thus, the only remaining claim against Synergy was the survival/professional negligence claim.

--------

(c) While an action is pending it shall operate as a bar against the bringing of any other action for such wrongful death.

Pa.R.C.P. 2202. Pursuant to 42 Pa.C.S.A. § 8301, the persons entitled by law to recover damages for wrongful death are "the spouse, children[,] or parents of the deceased." 42 Pa.C.S.A. § 8301(b). In dismissing the action, the trial court found that (1) the Swatts, as sister and niece of the decedent, lacked capacity to bring a wrongful death suit under section 8301(b), and (2) the existing suit filed by the then-Executrix (**Blusius I**) precluded the filing of a second action pursuant to Pa.R.C.P. 1028(a)(6) (pendency of prior action). **See also** Pa.R.C.P. 2202(c) (pending action operates as bar to other action for wrongful death).

Both Nottingham[5] and Synergy filed answers and new matter to the third amended complaint, to which Administratrix responded. In their new matter, both defendants raised, *inter alia*, the statute of limitations as an affirmative defense. On July 15, 2015, Synergy filed a motion for judgment on the pleadings on the basis that the remaining claim against it—professional negligence—was time-barred. The trial court granted Administratrix a limited period of discovery relative to the statute of limitations issue. Following discovery, briefing, and oral argument, the trial court granted Synergy's motion on April 8, 2016, finding that the claim against it was not asserted until May 13, 2014, more than two years after Decedent's death.[6] On May 23, 2016, six weeks after the court entered judgment on the pleadings in favor of Synergy, Administratrix filed a "Motion for Reconsideration or, Alternatively, for Finality." The parties submitted court-ordered briefs on the "finality" issue; however, no ruling was ever issued.[7]

---

[5] **See** discussion of issue regarding Nottingham's filing of its answer and new matter, **infra**.

[6] The statute of limitations on "[a]n action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another" is two years. 42 Pa.C.S.A. § 5524(2). "[A] survival action is not an independent cause of action, but a continuation of a cause of action that accrued to the decedent, and the latest time when the statute of limitations runs is at the decedent's death." **Dubose v. Quinlan**, 173 A.3d 634, 645 (Pa. 2017).

[7] As Synergy correctly noted in its brief in opposition to Administratrix's motion for reconsideration/determination of finality, the motion for finality—filed 45 days after the entry of the order granting judgment on the pleadings—was
*(Footnote Continued Next Page)*

After approximately five years of discovery, Nottingham filed a motion for summary judgment on June 23, 2020. On September 8, 2020, Administratrix filed a response to Nottingham's motion for summary judgment, as well as her own motion to correct the filing date of the action, *nunc pro tunc*, in which Administratrix sought to have the filing date of the third amended complaint in **Blusius III** relate back to the filing date of the writ of summons in **Blusius I**, the action previously dismissed for lack of prosecution. On September 9, 2020, the trial court issued an order scheduling oral argument on Nottingham's summary judgment motion for November 24, 2020. Despite not yet having heard oral argument, on October 23, 2020, the court issued an order denying Nottingham's motion for summary judgment. That same day, the court issued another order granting Administratrix's motion to correct the filing date of the third amended complaint. This order was issued before Nottingham's response to that motion was filed of record. The docket does not reflect that either party was notified of the orders issued on October 23, 2020. **See** Docket (**Blusius III**), at 9.

Notwithstanding its prior issuance of an order denying summary judgment, on November 20, 2020, the trial court issued an order continuing

---

untimely filed. **See Brickman Group, Ltd. v. CGU Ins. Co.**, 829 A.2d 1160, 1163-65 (Pa. Super. 2003) (interpreting prior version of Pa.R.A.P. 341(c)(1) to require application for determination of finality be filed within 30 days of entry of order). Similarly, "the trial court may consider a motion for reconsideration only if the motion for reconsideration is filed within thirty days of the entry of the disputed order." **Haines v. Jones**, 830 A.2d 579, 584 (Pa. Super. 2003); **see also** 42 Pa.C.S.A. § 5505 (court may modify or rescind order within 30 days of entry).

the previously scheduled November 24, 2020, oral argument on Nottingham's summary judgment motion. When the court failed to reschedule the argument, Nottingham filed a *praecipe* to relist oral argument on July 6, 2021. On July 23, 2021, the court issued an order rescheduling oral argument for September 1, 2021.

Following an "unexpected series of events," on or about August 11, 2021, Administratrix became aware of the two orders entered by the court on October 23, 2020. Nottingham's Motion for Reconsideration of the Court's Orders Dated October 23, 2020, 8/20/21, at ¶ 29. She alerted her counsel, who in turn forwarded copies of the orders to counsel for Nottingham. **See** *id.* at ¶ 31. As a result, Nottingham filed a motion for reconsideration of those orders on August 20, 2021, seeking to have the orders vacated and stricken and to move forward with the oral argument scheduled for September 1, 2021. Following a response by Administratrix, on September 21, 2021, the court granted reconsideration and struck the orders.

On October 12, 2021, the court entered an order granting summary judgment in favor of Nottingham, holding that Administratrix's negligence claims were barred by the statute of limitations and her breach of contract claims were barred by the "gist of the action" doctrine. **See** Trial Court Opinion, 10/12/21, at 3-5 (unpaginated). On November 9, 2021, Administratrix filed a motion for reconsideration, which the court denied on December 2, 2021. On November 10, 2021, Administratrix filed two notices

of appeal, one at the **Blusius I** docket number[8] and one at the **Blusius III** docket number, both challenging the October 12, 2021 order in the **Blusius III** matter granting summary judgment in favor of Nottingham.[9] Administratrix raises the following claims for our review:

I.   Did the trial court err or abuse its discretion in ruling that the [Administratrix's] survival action was time-barred under the statute of limitations when the Decedent died on January 5, 2012[,] and the [former Executrix] filed a *praecipe* for writ of summons on January 2, 2014, and when the trial court granted the [former Executrix] leave to file an amended complaint within that same docket, but the Northumberland Prothonotary, through no fault of the Estate, filed the [] complaint in a new docket?

II.   Did the trial court err or abuse its discretion in failing to toll the statute of limitations when the Defendants in this matter failed to produce requested documents during the initial two-year statutory window, and when the Defendants also misle[d Administratrix] as to the identity of the corporate entity that administered pharmaceutical drugs that contributed to the Decedent's death?

III.   Did the trial court err or abuse its discretion in dismissing [Synergy] from suit due to the alleged passage of the statute of limitations when the Estate did name "Synergy" in its initial, timely-filed pleadings, but simply got the corporate name wrong,

---

[8] As noted above, on May 29, 2014, the trial court entered an order dismissing the action at the **Blusius I** docket number for failure to file a complaint. Administratrix did not file a petition to open or strike the judgment of *non pros*. "Any appeal related to a judgment of *non pros* lies not from the judgment itself, but from the denial of a petition to open or strike." **Madrid v. Alpine Mountain Corp.**, 24 A.3d 380, 382 (Pa. Super. 2011). As the failure to file such a petition operates as a waiver of all rights to address the issues concerning the underlying judgment of *non pros*, **see id.**, we quash the appeal filed at docket number 1507 EDA 2021.

[9] This Court consolidated the appeals in response to an application filed by Administratrix on March 16, 2022.

and when the Defendants misle[d Administratrix] as to the true and correct name of the intended corporate defendant?[10]

IV. Did the trial court err or abuse its discretion when it ruled that the gist of the action doctrine bars the [Administratrix's] breach of contract claim when the contract at issue memorializes specific promises to provide nourishment and care, which promises were allegedly breached, and when the contract specifies a certain dollar sum for such promises, which [Decedent] paid?

Brief of Appellant, at 3-4 (unnecessary capitalization omitted).

Administratrix's first two claims allege that the trial court erroneously ruled that her negligence claims against Nottingham were time-barred and, accordingly, improperly granted summary judgment in favor of Nottingham.

In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: [A]n appellate court may reverse the entry of summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we review the record in the light most

___

[10] This claim may be summarily disposed of by noting that Administratrix failed to include in her notice of appeal the April 8, 2016, trial court order granting judgment on the pleadings in favor of Synergy. That order became final when the court disposed of the remaining claims and parties in its October 12, 2021, order granting Nottingham's motion for summary judgment. **See Weible v. Allied Signal, Inc.**, 963 A.2d 521, 524–25 (Pa. Super. 2008) (permitting appeal where trial court order declaring case settled as to all remaining parties rendered prior grants of summary judgment final for purposes of appeal). Pennsylvania Rule of Appellate Procedure 904 requires a petitioner to specifically identify in her notice of appeal the order(s) from which she wishes to appeal. **See** Pa.R.A.P. 904(a). Accordingly, Administratrix's failure to identify the April 8, 2016, order in her notice of appeal waives any claims related thereto. **See Jordan v. Pennsylvania State University**, 276 A.3d 751, 761 (Pa. Super. 2022) (appellant's failure to appeal trial court's order denying petition for relief from judgment of *non pros* renders all claims related to that order waived).

favorable to the non[-]moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our [standard of] review is *de novo*.

***Caterpillar Fin. Servs. Corp. v. Get 'Er Done Drilling, Inc.***, 286 A.3d 302, 305–06 (Pa. Super. 2022).

The awarding of summary judgment with respect to an issue of fact is supportable only when the non-moving party has failed to adduce evidence from which a factfinder could find in his/her favor. ***Washington v. Baxter***, [] 719 A.2d 733 ([Pa.] 1998). Stated alternatively, where there is evidence that would allow a jury to find in the non-moving party's favor, summary judgment should be denied and the case should proceed to trial. Moreover, the evidence must be viewed in a light most favoring the non-movant giving that party the benefit of credibility determinations and any inferences deducible from the evidence. ***Young v. Commonwealth***, [] 744 A.2d 1276 ([Pa.] 2000). Thus, in the present case, we must examine the evidence to determine whether a reasonable factfinder could conclude that Appellants' action was instituted in a timely fashion.

***Griffin v. Cent. Sprinkler Corp.***, 823 A.2d 191, 199–200 (Pa. Super. 2003).

In responding to a summary judgment motion,

a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

***Ertel v. Patriot-News Co.***, 674 A.2d 1038, 1042 (Pa. 1996).

Preliminarily, we address Administratrix's claim that Nottingham waived the statute of limitations defense by failing to file an answer and new matter. Under Pa.R.C.P. 1030(a) and 1032(a), if the statute of limitations is not pled as a new matter, the right to assert the defense is waived. ***See*** Pa.R.C.P.

1030(a), 1032(a); ***Holmes v. Lankenau Hosp.***, 627 A.2d 763, 765 (Pa. Super. 1993). However, in certain circumstances, courts are not required to strictly enforce the rule and will allow a defendant to assert the defense for the first time in a motion for summary judgment. ***See Holmes***, 627 A.2d at 766. Where the rights of the plaintiff are not prejudiced, the defendant's failure to properly plead the defense as new matter under Rule 1030 does not necessarily equate to waiver thereof; rather, the court has discretion to allow or deny the defense. ***Id.*** at 766. A plaintiff is not prejudiced by defendant's failure to assert a defense where, prior to the defendant's assertion of the defense in its motion, the plaintiff was already subjectively aware of that defense. ***See Blumenstock v. Gibson***, 811 A.2d 1029, 1039-40 (Pa. Super. 2002). The rules of civil procedure must be liberally construed so that actions are resolved in a just, speedy, and inexpensive manner consistent with Pa.R.C.P. No. 126.[11] ***Holmes***, 627 A.2d at 765–66.

Here, Nottingham sent its answer and new matter to the third amended complaint to the Northumberland County Prothonotary via FedEx overnight delivery on April 1, 2015. ***See*** Nottingham's Sur Response in Support of

---

[11] Pennsylvania Rule of Civil Procedure 126 provides:

> The rules shall be liberally construed to secure the just, speedy[,] and inexpensive determination of every action or proceeding to which they are applicable. **The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties**.

Pa.R.C.P. 126 (emphasis added).

Motion for Summary Judgment, 12/3/20, at 2 (unpaginated); *id.* at Exhibit SR-2 (transmittal letter from Nottingham's counsel to Prothonotary); *id.* at Exhibit SR-3 (first page of Answer and New Matter marked "received" on April 2, 2015). Nottingham's answer and new matter were not immediately docketed by the Prothonotary.[12] However, the pleading was received by counsel for Administratrix, who filed an answer to Nottingham's new matter—which included a defense based upon the statute of limitations—on April 13, 2015. Accordingly, Administratrix was not prejudiced by the failure of the Prothonotary to timely file Nottingham's answer and new matter of record, as she was well-aware of Nottingham's statute of limitations defense no later than April 13, 2015, when she filed her answer to new matter. ***See Blumenstock***, ***supra***. Thus, the trial court did not err in declining to find waiver. Accordingly, we turn to Administratrix's claims on appeal.

Administratrix's claims require us to determine whether there was sufficient evidence from which a factfinder might conclude her negligence claims were timely filed. Administratrix's arguments in this regard are all

---

[12] In Nottingham's sur response in support of summary judgment, Nottingham's counsel stated he eventually determined that the answer and new matter was received by the court, but it was directed, not to the Prothonotary, but to the trial judge's chambers. The judge's secretary acknowledged that the "received" stamp, and date and initials affixed thereon, were hers. On November 24, 2020, the pleading was docketed with a notation that it was "rec[eived] by judge's chambers 4/2/2015" and "rec[eived] with Prothonotary 11/24/2020." Docket (***Blusius III***), at 10. We note with some irony Administratrix's argument that she should not be held responsible for errors purportedly made by the Prothonotary's Office, while simultaneously arguing that an error by the Prothonotary should be held against Nottingham.

predicated on her assertion that *Blusius I* and *Blusius III* are not, in actuality, separate actions, but rather a unitary action, timely commenced via writ of summons on January 2, 2014, within two years of the decedent's death. As such, Administratrix asserts that the filing of the complaint (albeit at the *Blusius III* docket number) after the expiration of the statute of limitations on her negligence claims is of no moment.

In support of this assertion, Administratrix points to the fact that, on April 15, 2014, the then-Executrix filed a motion to enlarge time to file a complaint at the *Blusius I* docket number. Although Executrix did not file a complaint, on May 13, 2014, Administratrix did so in her capacity as Administratrix *pro tem*, within the time allotted by the court in response to the Executrix's motion to enlarge time. According to Administratrix, the timing of this filing—within the period of the extension granted by the trial court in the *Blusius I* case—demonstrates that the complaint was intended to continue that action rather than initiate a new—by then untimely—action.

As noted above, the May 13, 2014, complaint was docketed at a new number—the *Blusius III* docket number. Administratrix blames the Prothonotary[13] for assigning the complaint a new docket number, rather than filing it under the *Blusius I* docket number. She asserts that she "instruct[ed]

_____

[13] We note with disapproval the inappropriate commentary directed to the Northumberland County Prothonotary, as well as to the trial court, included by the Administratrix in her brief. *See, e.g.*, Brief of Appellant, at 69 (stating Administratrix has "lost faith and trust" in the prothonotary and accusing trial court of "copy[ing]-and-past[ing]" from Nottingham's summary judgment brief).

the Prothonotary to file it in the correct docket at CV-2014-05[,]" but the Prothonotary "elected to docket it" at a new number. Brief of Appellant, at 16-17.

As noted above, the failure by a non-moving party to adduce sufficient evidence on an issue essential to her case and on which she bears the burden of proof establishes that there is no genuine issue of material fact and entitles the moving party to judgment as a matter of law. *Ertel*, 674 A.2d at 1042. Here, in order to defeat summary judgment on the issue of the statute of limitations, Administratrix bore the burden of proving that the filing of her May 13, 2014, complaint at a new docket number was simply an administrative error on the part of the Prothonotary—a "breakdown in the court's operations"—and not the fault of Administratrix or her counsel. *See 2303 Bainbridge, LLC v. Steel River Bldg. Sys., Inc.*, 239 A.3d 1107, 1117 (Pa. Super. 2020) (party's filing error excusable when it is result of breakdown in court's operations). In response to Nottingham's statute of limitations claim, Administratrix averred that her "initial [c]omplaint was erroneously docketed under CV-2014-25, **despite plaintiff's intentions and attempts to file said [c]omplaint under number CV-2014-5**." Plaintiff's Opposition to Nottingham's Motion for Summary Judgment, 9/8/20, at ¶ 3 (emphasis added). However, Administratrix adduced no evidence regarding her "intentions and attempts" to file her complaint under the pre-existing docket

number.[14]  She attached no affidavit from prior counsel, or from anyone in the Prothonotary's Office, that would create an issue of fact as to the timeliness of her (facially untimely) filing.[15]  Because Administratrix did not adduce any evidence supporting her assertion that a breakdown in court operations caused her complaint to be filed under the wrong docket number, there was

_____

[14] Our review of the record reveals that, rather than including the **Blusius I** docket number in the caption of the May 13, 2014, complaint, Administratrix left the docket number blank, as one would do when commencing a new action.  **See** Complaint, 5/13/14 (Caption).  Moreover, the docket in **Blusius III** indicates that the May 13, 2014, complaint "commenced" a civil action, for which a commensurate filing fee was assessed and paid.  **See Blusius III** Docket, at 1 (noting "5/13/2014 Filing: Commencement of Any Civil Action Paid . . . $116.00").

[15] Administratrix attached to her "Supplemental Memorandum of Fact and Law Pending Decision on Motion for Summary Judgment and Motion for Reconsideration of Decision to Vacate and Strike Plaintiff's Request for *Nunc Pro Tunc* Relief," filed on October 1, 2021, an "affidavit" signed by Ann Marie Swatt, reciting reasons allegedly given to her by an unidentified clerk in the Prothonotary's office as to why the May 13, 2014, complaint was docketed under a new number.  Administratrix further attached a similar "affidavit" to her sur reply to Nottingham's reply to her supplemental memorandum, "providing . . . facts that [she] witnessed that occurred during oral arguments from 2014 to 2020."  Administratrix's Sur Reply, 10/20/21, at Exhibit E. However, Administratrix's submissions are not "affidavits" as required for consideration on summary judgment, as they are neither sworn nor made subject to the penalties of unsworn falsification and contain only inadmissible hearsay.  **See** Pa.R.C.P. 76 (setting forth requirement that affidavit be either sworn or affirmed before an officer authorized by law to administer oaths, or unsworn and containing statement that it is made subject to penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities); Pa.R.C.P. 1035.1 (providing "record" for purposes of summary judgment comprised of pleadings, depositions, answers to interrogatories, admissions, affidavits, and expert reports); Pa.R.C.P. 1035.4 ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the signer is competent to testify to the matters stated therein.").

no genuine issue of material fact regarding the statute of limitations issue.[16]

Therefore, Nottingham was entitled to summary judgment on Administratrix's

negligence claims as a matter of law. *Ertel*, *supra*.

Finally, Administratrix asserts that the trial court erred in finding that

the gist of the action doctrine bars her breach of contract claims.

Administratrix asserts that "the injuries and damages sought between [her]

negligence claim[s] and contract claim[s] are separate and distinct."  Brief of

Appellant, at 63.  Administratrix argues that, while her tort claims arise from

Nottingham's alleged breach of duties imposed as a matter of social policy,

_____

[16] Administratrix also argues that, in the alternative, the trial court should have tolled the statute of limitations based on the doctrine of fraudulent concealment.  Administratrix asserts that "[d]efendants in this case made fraudulent remarks or improperly concealed or failed to disclose material information that caused [Administratrix] delays in her investigation of the causes of [the decedent's] death."  Brief of Appellant, at 51.

"Where, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations." ***Kingston Coal Co. v. Felton Min. Co., Inc.***, 690 A.2d 284, 290 (Pa. Super. 1997) (citation omitted).  "[I]n order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied." ***Id.*** at 291.  The burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party. ***Id.*** at 290-91.

Here, Administratrix's claim of fraudulent concealment is completely belied by the fact that, on January 6, 2014—the last day of the limitations period—she timely filed a complaint in ***Blusius II***, raising nearly identical claims against Nottingham.  Moreover, Administratrix concedes that she "cannot produce" evidence in support of her fraudulent concealment claim.  Brief of Appellant, at 55.  Accordingly, this claim is meritless.

*see id.* at 62, the contract claims arise from Nottingham's alleged breach of Paragraphs 1 and 2 of the Admission Agreement ("Agreement").[17] *See id.* at 64-67.

Generally, the gist of the action doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims. *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002). As a practical matter, the doctrine is employed "to ensure that a party

_____

[17] Paragraphs 1 and 2 of the Agreement provide as follows:

1. SERVICES PROVIDED BY FACILITY

The Facility agrees to furnish room, meals, housekeeping services, use of walker or wheelchair when medically necessary, nursing care, linen and bedding, and such other personal services as may be required for the health, safety, welfare, good grooming[,] and well-being of the resident.

2. AVAILABILITY OF PHYSICIANS AND MEDICATIONS

The Facility agrees to obtain the services of a licensed physician of the Resident's choice whenever necessary, or the services of another licensed physician if a personal physician has not been designated or is not available, as well as to [e]nsure the availability and administration of such medication as a physician may order.

Admission Agreement, 7/20/06, at 1. Administratrix claims that Nottingham breached these provisions by: failing to provide adequate nursing care; failing to provide competent administration and availability of medications; failing to provide proper nutrition; failing to provide proper hydration; failing to provide physical therapy for rehabilitation of Decedent's hip injury; failing to provide appropriate pain management; failing to monitor Decedent's thyroid condition; failing to provide proper dental and patient care; and failing to provide proper monitoring of medicines. *See* Third Amended Complaint, 1/29/15, at ¶¶ 95-103.

does not bring a tort claim for what is, in actuality, a claim for a breach of contract." **Bruno v. Erie Ins. Co.**, 106 A.3d 48, 60 (Pa. 2014). Here, the trial court held that Administratrix's contract claims were "simply [tort claims] masquerading as breach of contract" claims and, applying the gist of the action doctrine, dismissed her contract claims. Trial Court Opinion, 1/25/22, at 5. We conclude that the court erred.

Recently, in **Poteat v. Asteak**, __ A.3d __, 2024 WL 1202926 (Pa. Super. 2024), this Court addressed a scenario in which the plaintiff asserted a breach of contract claim arising out of an agreement for legal services. The trial court, relying on **Bruno**, **supra**,[18] reasoned that because the contractual

_____

[18] This Court, in **Poteat**, summarized the facts and holding of **Bruno** as follows:

> In **Bruno**, the plaintiff[s]/homeowners had purchased homeowner's insurance from the defendant/insurance company. The plaintiffs informed their homeowner['s] insurance company that they had found mold in their home. The defendant insurance company retained an engineer and adjuster to determine whether there was mold in the plaintiff[s'] home. The engineer and adjuster came to their home to investigate mold and informed the homeowners that the mold was harmless and had no health consequences.

> The homeowners relied on this advice, later suffered health problems from mold exposure, and sued the defendant/insurance company. The homeowner[s]/plaintiff[s] asserted a tort claim against the defendant/insurance company, alleging that its engineer and adjuster negligently advised the homeowners about the risk of exposure to mold. The defendant/insurance company argued that the gist of the action doctrine precluded the plaintiff[s] from maintaining [their] tort claims because the insurance contract determined the scope of the insurance

*(Footnote Continued Next Page)*

duty asserted by the plaintiff was the same duty he could have asserted in a tort claim—i.e., professional negligence—the gist of the action doctrine converted the contractual duty into a tort duty and, thus, extinguished the duty inherent in the contract. Having recast plaintiff's contract claim as one sounding in tort, the court concluded that the claim was barred by the two-year statute of limitations governing tort claims and, consequently, dismissed the complaint.

In reversing the trial court, this Court found as follows:

> The trial court misapplied the holding in **Bruno**. [There, t]he Supreme Court articulated the principles for the gist of the action doctrine as applying to whether a plaintiff who has a contract with a defendant may maintain a tort claim as well. The Supreme Court did not hold, and we have found no binding authority[] for the trial court's conclusion[,] that the gist of the action doctrine extinguishes any rights that the contract provides a plaintiff when the duty the defendant undertook in the contract is the same duty that a tort claim would impose on a defendant. In other words, the gist of the action doctrine does not extinguish contractual

---

> company's duty to the homeowner[s] and the contract did not impose the duty to provide accurate advice about mold to the homeowner. Our Supreme Court disagreed and concluded the gist of the action doctrine did not apply because the negligence claim was based on an alleged breach of a social duty imposed by the law of torts, and not a breach of a duty created by the underlying contract of insurance. Thus, even though the plaintiff[s] and defendant had a contractual relationship, the duty expressed in the contract differed from the duty the plaintiff[s] asserted in [their] tort claim, so the gist of the action doctrine did not bar the plaintiff[s] from asserting a tort claim.

**Poteat**, **supra** at *4 (internal citations omitted).

rights; it merely addresses whether a plaintiff can assert a tort claim when the duty set forth in the contract is similar to the duty that the plaintiff alleges in a tort claim.

*Id.* at *5.

Here, the trial court similarly misapplied the gist of the action doctrine by extinguishing Administratrix's contract claims simply because the duties alleged therein were similar to those alleged in her tort claims. Accordingly, we reverse the order of the trial court dismissing Administratrix's contract claims under the gist of the action doctrine and remand for further proceedings.[19]

Order affirmed in part and reversed in part. Case remanded for further proceedings in accordance with this memorandum. Jurisdiction relinquished.

P.J.E., Stevens joins the Memorandum.

Bowes, J., Files a Concurring Memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/26/2024

---

[19] We make no comment on the viability of Administratrix's contract claims, as the only issue before this Court is whether the gist of the action doctrine converted them to tort claims barred by the applicable statute of limitations.